IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE : | § |
| | § Chapter 11 |
| COWBOYS FAR WEST, LTD. | § |
| | § Case No. 16-51419 |
| Debtor. | § |
| | § |

**BUSINESS PROPERTY LENDING, INC.'S**
**PLAN OF LIQUIDATION FOR COWBOYS FAR WEST, LTD.**

**PORTER HEDGES LLP**
Eric M. English
State Bar No. 24062714
Amy T. Geise
State Bar No. 24083954
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas  77002-2764
Telephone:  (713) 226-6000
Facsimile:  (713) 226-6255
EEnglish@porterhedges.com
**ATTORNEYS FOR BUSINESS**
**PROPERTY LENDING, INC.**

**Dated:**  October 25, 2016.

Business Property Lending, Inc. ("BPL" or "Plan Proponent"), a wholly owned subsidiary of EverBank Financial Corporation ("Everbank") and a secured creditor of Cowboys Far West Ltd. (the "Debtor"), hereby proposes the following plan of liquidation (the "Plan") in the Debtor's Chapter 11 case pursuant to sections 1121(a), 1122, 1123 and 1129 of title 11 of the United States Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article I of the Plan. BPL is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan provides for the sale of all of the Debtor's Property. The Plan provides for the appointment of the Plan Administrator to conduct the sale of the Property and to administer the Sale Proceeds for the benefit of holders of Allowed Claims in accordance with the priorities set forth in the Bankruptcy Code. If a surplus exists after paying the Allowed Claims in full, each holder of an Interest shall receive a pro-rata distribution of the Sale Proceeds on account of their Interest.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY. ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires (i) the terms set forth in this Article 1 shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

**1.1** **"Administrative Bar Date"** means the first Business Day that is 30 days after the Effective Date.

**1.2** **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

**1.3** **"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

**1.4** **"Allowed Claim"** means a Claim against the Debtor that (a) has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

**1.5** **"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.6** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

**1.7** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas or the United States District Court for the Western District of Texas to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

**1.8** **"Bankruptcy Fees"** mean all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

**1.9** **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Texas, in either case, as now in effect or hereinafter amended.

**1.10** **"Bar Date"** means October 24, 2016, the date fixed by Order of the Bankruptcy Court entered on June 27, 2016, subsequent to which date a Proof of Claim may not be timely filed.

**1.11** **"BPL"** means Business Property Lending, Inc., a wholly owned subsidiary of EverBank Financial Corporation, the holder of the BPL Class 2 Secured Claim.

**1.12** "**BPL Deed of Trust**" means the deed of trust securing the BPL Note dated December 21, 2007 and recorded in the real property records of Bexar County, Texas, as document number 20070298272, as amended, supplement and assigned.

**1.13** "**BPL Note**" means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or along thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by BPL, but originally held by General Electric Capital Corporation in the original principal amount **$5,000,000.00.**

**1.14** "**BPL Secured Claim**" means the Secured Claim against the Debtor and property of the Debtor or its estate held by BPL on account of the BPL Note and the BPL Deed of Trust.

**1.15** "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in San Antonio, Texas are authorized or required by law to close, or other Legal Holiday.

**1.16** "**Case**" means this case under Chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled: **Cowboys Far West, Ltd., Case No. 16-51419**.

**1.17** "**Cash**" means lawful currency of the United States of America.

**1.18** "**Claim**" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.19** "**Class**" means a category of substantially similar Allowed Claims or Allowed Interests.

**1.20** "**Closing Date**" means the date that the Property is sold to the Successful Purchaser and the Purchase Price has been fully tendered.

**1.21** "**Committee**" means any Committee appointed in this case pursuant to section 1102 of the Bankruptcy Code.

**1.22** "**Confirmation**" means the entry of the Confirmation Order.

**1.23** "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that (i) the Confirmation Order becomes a Final Order and (ii) the Confirmation Order is not stayed by an Order of a court of competent jurisdiction.

**1.24** "**Confirmation Order**" means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.25** "**Creditor**" means a holder of an Allowed Claim.

**1.26** "**Debtor**" means Cowboys Far West, Ltd.

**1.27** "**Disclosure Statement**" means the Disclosure Statement for Business Property Lending's Plan of Liquidation for Cowboys Far West, Ltd., including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

**1.28** "**Disputed Claim**" means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if, (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

**1.29** "**Disputed Claim Reserve**" means the segregated account or accounts established by the Plan Administrator pursuant to section 8.7 of the Plan.

**1.30** "**Effective Date**" means the day selected by BPL that is no earlier than the first Business Day after the date the Confirmation Order becomes a Final Order.

**1.31** "**Estate**" means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

**1.32** "**Far West Transaction**" means that complex transaction involving certain Insiders of the Debtor whereby the Debtor incurred substantial debts while transferring away valuable assets by attempting to remove Far West Realty, LP as the Debtor's limited partner.

**1.33** "**Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

**1.34** "**Governmental Unit**" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States

(but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

  1.35 "**Holder**" shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

  1.36 "**Insider Claim**" means an Allowed Claim held by or behalf of an Insider or any successor in interest or assignee thereof.

  1.37 "**Interest**" means an equity interest holder in the Debtor.

  1.38 "**Interest Holder**" means the holder of an Allowed Interest in the Debtor.

  1.39 "**Order**" means an order of the Bankruptcy Court.

  1.40 "**Petition Date**" means June 24, 2016, the date on which the Debtor commenced this Case by the filing of its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

  1.41 "**Plan**" means this Business Property Lending's Plan of Liquidation for Cowboys Far West, Ltd., as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

  1.42 "**Plan Administrator**" means [_____] who shall be appointed by this Court on the Confirmation Date pursuant to the Plan and shall act on behalf of the Debtor and BPL to effectuate the terms and provisions of this Plan.

  1.43 "**Plan Proponent**" means BPL.

  1.44 "**Post-Petition Tax Claim**" means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Closing Date.

  1.45 "**Priority Claim**" means that portion of a claim other than a Priority Tax Claim, an Administrative Claim, a Secured Claim or Bankruptcy Fees, to the extent entitled to priority under section 507 of the Bankruptcy Code.

  1.46 "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

  1.47 "**Professional**" means all professionals employed by the Debtor under section 327 of the Bankruptcy Code.

1.48 **"Professionals' Fees"** means compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with sections 330 and 331 of the Bankruptcy Code.

1.49 **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (including fees and expenses allowed under sections 330 or 331 of the Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to section 503 of the Bankruptcy Code.

1.50 **"Proof of Claim"** means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.51 **"Proof of Interest"** means a proof of Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.52 **"Property"** means the: (1) land, building, and improvements thereon located at 3030 NE Loop 410, San Antonio, Bexar County, Texas 78218, as further identified in the BPL Deed of Trust; (2) the Debtor's inventory and supplies, including liquor and beer; (3) the Debtor's office furniture and fixtures; (4) the Debtor's office equipment, including all computer equipment, lighting equipment and sound equipment; (5) all vehicles owned by the Debtor; and (6) all other assets of the Debtor, including but not limited to causes of action for pre-petition fraudulent transfers and preferences.

1.53 **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.54 "**Purchase Price**" means the total Cash that the Successful Purchaser agrees to pay in exchange for the Property.

1.55 "**Sale**" means the public sale of the Property in accordance with section 363 of the Bankruptcy Code and which sale shall be free and clear of all liens, claims and encumbrances, with any liens attaching to the proceeds.

1.56 **"Sale Proceeds"** means the proceeds received from the Purchase Price on account of the Sale of the Property.

1.57 **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.58 **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's

interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.59 **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to a security interest under applicable non-bankruptcy law.

1.60 **"Successful Purchaser"** means the successful purchaser of the Property which is being sold pursuant to this Plan.

1.61 **"Unsecured Claim"** means an Allowed Claim, including a deficiency claim, which is not an Administrative Claim, a Bankruptcy Fee, an Insider Claim, an Insured Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a Secured Tax Claim.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

2.1 Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.2 **Administrative Bar Date.** Except as otherwise provided in section 2.3 of the Plan, requests for payment of and/or Proofs of Administrative Claims must be filed no later than the Administrative Bar Date. The Administrative Bar Date is the date that is the first business day that is 30 days after the Effective Date. Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtor or its Property; provided, however, that Holders of Claims for Administrative Expenses arising in the ordinary course of the Debtor's business need not file Administrative Claims.

2.3 **Professionals' Compensation and Reimbursement.** All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date. Any such application timely filed shall be deemed to be a Proof of Administrative Claim.

2.4 **Post-Petition Tax Claims.** All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 30 days following the Effective Date; and (ii) 60 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its Property or the Successful Purchaser, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

Subject to the provisions of Article VIII of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (1)

7

on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Plan Administrator, and/or the Debtor and such Governmental Units.

**2.5** **Administrative Claims.** Subject to the provisions of Article VIII of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Plan Administrator in Cash in full on (i) the later of the Closing Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Plan Administrator and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

**2.6** **Priority Tax Claims.** Subject to the provisions of Article VIII of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Priority Tax Claims shall be paid by the Plan Administrator in Cash in full on the Effective Date.

**2.7** **Bankruptcy Fees.** All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code shall be paid by the Plan Administrator, in Cash in full as required by statute.

# ARTICLE III
# CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1** **Acceptance by Impaired Classes.** Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**3.2** **Voting Presumptions.** Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Equity Interests in Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

The following table designates the Claims and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Code, and (iii) deemed to reject the Plan.

| Claims | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Priority Claims | Unimpaired | No |
| Class 2 | BPL's First Lien Secured Claim | Impaired | Yes |
| Class 3 | PSB's Second Lien Secured Claim | Impaired | Yes |
| Class 4 | Other Secured Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Interests in the Debtor | Impaired | Yes |

## ARTICLE IV
## TREATMENT OF UNIMPAIRED CLAIMS

Allowed Claims in Classes 1 are not impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

**4.1** **Class 1 – Priority Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Closing Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Plan Administrator (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim; from the Sale Proceeds.

## ARTICLE V
## TREATMENT OF IMPAIRED CLAIMS

**5.1** **Class 2—BPL's First Lien Secured Claim.** Class 2 consists of BPL's first lien Secured Claim. Upon the Closing Date, a holder of an allowed Class 2 claim will receive the proceeds of its collateral. The Class 2 is Impaired and, as such, the Holder of the Class 2 Claim is entitled to vote on the Plan.

**5.2** **Class 3—PSB's Second Lien Secured Claim.** Class 3 consists of PSB Credit Services, Inc.'s ("PSB") secured claim. Upon the Closing Date, a holder of an allowed Class 3 Claim will receive the proceeds of its collateral after all allowed senior claims have been paid in full in accordance with the priorities set forth in the Bankruptcy Code. The Class 3 is Impaired and, as such, the Holder of the Class 3 Claim is entitled to vote on the Plan.

**5.3** **Class 4—Other Secured Creditor Claims.** Class 4 consists of the Allowed Other Secured Creditor Claims. For purposes of voting and distribution, each Holder of an Other Secured Creditor Claim shall be deemed to be classified in a separate subclass of Class 4. Upon

the Closing Date, a holder of an allowed Class 4 claim will receive the proceeds of its collateral after any Allowed senior claims have been paid in full in accordance with the priorities set forth in the Bankruptcy Code. The Class 4 is Impaired and, as such, the Holders of the Class 4 Claims are entitled to vote on the Plan.

     **5.4**     **Class 5—General Unsecured Claims**. Class 5 consists of the collective holders of Allowed Unsecured Claims against the Debtor. Each Allowed Unsecured Claim shall receive a pro-rata distribution of the Sale Proceeds after all allowed senior claims have been paid in full in accordance with the priorities set forth in the Bankruptcy Code. The Class 5 is Impaired and, as such, the Holders of the Class 5 Claims are entitled to vote on the Plan.

     **5.5**     **Class 6—Interests in the Debtor**. Class 6 consists of the collective Interests in the Debtor. Each holder of an Interest shall receive a pro-rata distribution of the Sale Proceeds on account of their Interest after all classified and unclassified claims have been paid in full in accordance with the priorities set forth in the Bankruptcy Code, and thereafter, their Interest shall be extinguished. The Class 6 is Impaired and, as such, the Holders of the Class 6 Interests are entitled to vote on the Plan.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     **6.1**     **Rejection of Executory Contracts and Unexpired Leases.** On the Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected.

     **6.2**     **Rejection Claims.** Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases of the Debtor pursuant to Section 6.1 of the Plan shall be treated as Unsecured Claims.

     **6.3**     **Bar to Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 6.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Closing Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or its successors or their respective properties.

## ARTICLE VII
## IMPLEMENTATION OF THE PLAN

     **7.1**     **Implementation.** The Plan Administrator shall be appointed on the Effective Date and the Plan Administrator, on behalf of the Debtor's Estate shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the

Bankruptcy Code, directing the Plan Administrator and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. The Successful Purchaser shall have the protections afforded under the "good faith" purchase provisions of §363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived. The Plan Administrator is designated as a party in fact to execute all documents in the name of the Debtor as may be required to consummate the Sale. Following the Effective Date, the Plan Administrator, on behalf of the Debtor, may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

      **7.2**    **Sale of Assets.** In order to fund the distributions under the Plan, the Plan Administrator shall sell the Debtor's Property. The Plan Administrator shall consummate the closing and Sale of the Property to the Successful Purchaser and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in §1146(a) of the Bankruptcy Code. Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the Debtor's Property shall be sold to the Successful Purchaser, free and clear of any and all Liens, Claims, Encumbrances, Interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in this Plan, such sale being subject to higher or better offers. In order to locate potential buyers, the Plan Administrator shall have the authority to hire real estate agents or other professionals at his/her choosing to market the Property.

      **7.3**    **Deadline for Completing Sale.** The Plan Administrator shall have sixty (60) days after the Effective Date for the Closing Date to occur. If it does not, the Plan Administrator shall sell the Property at an auction.

      **7.4**    **Vesting of Assets.** Except as otherwise provided in the Plan, once the Successful Purchaser tenders the Purchase Price to the Plan Administrator, the Property shall vest in the Successful Purchaser free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

      **7.5**    **Funding.** Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Debtor and the Plan Administrator in accordance with the terms of the Plan. Except as set forth elsewhere in the Plan, all distributions to be made shall be funded from the Sale Proceeds. At the Closing, the Successful Purchaser shall deliver to the Plan Administrator and the Plan Administrator shall segregate sufficient cash to pay or reserve for all payments that are to be made pursuant to the terms of the Plan.

      **7.6**    **Execution of Documents.** (a) On the Closing Date, the Plan Administrator and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan. The Debtor shall not interfere with the Plan Administrator in the performance of his duties.

(b)     Except as otherwise provided in the Plan, all assets transferred (i) by the Estate or (ii) by any non-debtor third party in accordance with the terms of the Plan shall be, as of the Closing Date, deemed to be free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

(c)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied upon compliance with the provisions of Article 5 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**7.7     Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

**7.8     Preservation of Rights of Action.** The Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Plan Administrator, who may, in accordance with his/her determination of the best interest of the estate, seek to enforce any claims, rights and causes of action arising under sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory, including but not limited to fraudulent transfer and preference actions against Insiders in connection with the Far West Transaction.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1     Authority of the Plan Administrator to Make Distributions.** The Plan Administrator shall distribute all Cash or other property to be distributed under the Plan. The Plan Administrator may employ or contract with other entities to assist in or perform the distribution of the property to be distributed. The Plan Administrator shall be entitled to compensation for services rendered under the Plan at its usual and customary fee and reimbursement of all expenses incurred in the performance of its duties. Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distribution, pursuant to this Article 8 of the Plan), the Plan Administrator shall be deemed to be an officer of the Debtor with full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

**8.2     Timing of Distributions Under the Plan.** Subject to section 8.6 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Claim shall be deemed to be timely made if made on or within five Business Days following the

12

5862788v1

later of (i) the Closing Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or (iii) such other times provided in the Plan.

**8.3** **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator may object to the allowance of any Claim filed with the Bankruptcy Court in whole or in part by serving and filing an objection to such Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date or (ii) 30 days after the date Proof of such Claim or a request for payment of such claim is filed.

**8.4** **Prosecution of Objections.** After the Confirmation Date, only the Plan Administrator shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Plan Administrator shall have the right to litigate to judgment, settle or withdraw any objection to any Claim.

**8.5** **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

**8.6** **Escrow of Cash Distributions.** (a) Unless otherwise agreed to in writing by the Plan Administrator and the holder of any Claim (other than an Unsecured Claim or an Insider Claim) to which this section 8.7 (a) applies, on the Closing Date the Plan Administrator shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims (other than an Unsecured Claim or an Insider Claim) that would be Allowed Claims but for the pendency of a dispute with respect thereto.

(b) In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c) The Plan Administrator shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited. Any Creditor whose Claim is so estimated or limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated or limited) as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

**8.7** **Distribution After Allowance.** Within 30 days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Plan Administrator shall distribute from the funds placed in escrow in accordance with section 8.7 of this Plan all Cash or other property, including any interest,

13

dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

**8.8** **Distribution After Disallowance.** Subject to section 8.7(c) of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be paid to the Allowed Interests.

**8.9** **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a) In the event any Creditor of Interest Holder is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Plan Administrator, in a form acceptable to the Plan Administrator: (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Plan Administrator and all other Entities deemed appropriate by the Plan Administrator from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(b) All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Debtor nor the Plan Administrator shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

**8.10** **Delivery of Distributions.** Except as provided in sections 8.12 and 8.13 of the Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address.

**8.11** **Undeliverable Distributions.** (a) If the distribution to the holder of any Claim is returned to the Plan Administrator as undeliverable, no further distribution shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 8.13 of the Plan.

(b) Nothing contained in the Plan shall require the BPL, the Debtor or the Plan Administrator to attempt to locate any holder of an Allowed Claim.

**8.12** **Unclaimed Distributions.** Any Cash or other property to be distributed under the Plan shall be retained by the Plan Administrator if it is not claimed by the Entity entitled thereto before the later of (i) one year after the Closing Date or (ii) 60 days after an Order allowing the

14

Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

**8.13    Set-offs.** The Plan Administrator may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Plan Administrator of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Plan Administrator has or may have against such holder.

## ARTICLE IX
## INJUNCTION AND RELEASES

**9.1    Injunction.** Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Closing Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the Successful Purchaser or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Closing Date except pursuant to the terms of the Plan.

**9.2    Limitation of Liability.** BPL, nor any of its respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.

**9.3    Plan and Confirmation Order as Release.** Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of the Plan.

15

# ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.1 Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

**10.2 Compliance with Tax Requirements.** In connection with the Plan, the Debtor and the Plan Administrator shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

**10.3 Due Authorization by Creditors.** Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

**10.4 Amendments.** The Plan may be altered, amended or modified by BPL, in writing, signed by BPL at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**10.5 Revocation.** BPL may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

**10.6 Request for Relief Under Section 1129(b).** If the Plan is accepted by one or more, but not all impaired Classes of Creditors, BPL may request confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

**10.7 Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Closing Date, BPL and the Plan Administrator may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**10.8 Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**10.9 Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**10.10 Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtor at 3030 NE Loop 410, San Antonio, TX 78218, with a copy to James S. Wilkins, Willis & Wilkins, LLP, 711 Navarro St., Suite 711, San Antonio, TX 78205;

(b) if to BPL, c/o Eric English, Porter Hedges LLP, 1000 Main Street, Houston, Texas 77002;

(c) if to any Creditor at (i) the addresses set forth on the applicable Proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related Proof of Claim, or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Plan Administrator has not received a written notice of a change of address; and

(d) if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

**10.11 Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas without giving effect to the principles of conflict of laws thereof.

**10.12 Other Actions.** Nothing contained herein shall prevent BPL, the Debtor or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

**10.13 Severability.** In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**10.14 Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

**11.1 Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)	Insure that the Plan is consummated, and to enter an Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

(b)	Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(c)	Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)	Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)	Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)	Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(g)	Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h)	Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(i)	Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(j)	Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(k)	Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

5862788v1

(l) Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(m) Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

(n) Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(o) Enter an Order or Final Decree concluding the Case.

**11.2 Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

# ARTICLE XII
# CLOSING THE CASE

**12.1 Substantial Consummation.** Until the occurrence of the Closing Date and Substantial Consummation of the Plan, the Debtor, its property and its creditors shall be subject to further orders of the Bankruptcy Court.

**12.2 Closing the Case.** Upon the Substantial Consummation of the Plan, the Plan Administrator shall expeditiously move for the entry of a Final Decree closing the Case and such other relief as may be just and appropriate.

**Dated:** October 25, 2016.

                **PORTER HEDGES LLP**

                */s/ Eric M. English*
                Eric M. English
                State Bar No. 24062714
                Amy T. Geise
                State Bar No. 24083954
                Porter Hedges LLP
                1000 Main Street, 36th Floor
                Houston, Texas 77002-2764
                Telephone: (713) 226-6000
                Facsimile: (713) 226-6255
                EEnglish@porterhedges.com
                **ATTORNEYS FOR BUSINESS PROPERTY LENDING, INC.**