The relief described hereinbelow is SO ORDERED.

Signed September 05, 2017.

_____

**Ronald B. King**
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  16-51419 |
| COWBOYS FAR WEST, LTD., | § | |
| DEBTOR(S) | § | CHAPTER  11 |

### ORDER CONFIRMING PLAN AND APPOINTING DISBURSING AGENT

On August 30, 2017, came on to be heard the hearing for Confirmation of Plan proposed by the above named Debtor.  The Court, having found that the Plan (Docket Text No. 173), and Disclosure Statement (Docket Text No. 172) have been properly transmitted to creditors, equity security holders and parties in interest whose acceptance is required by law, and notice of this hearing, having been given to all interested parties, and the Court, having heard and considered evidence and testimony at such hearing, finds that:

(1)  The Plan (Docket Text No. 173) proposed herein, a copy of which is attached hereto as Exhibit "A", has been accepted in

DGG\JSW\COWBOYS\ORD-CONF-PLN

writing by the creditors and equity security holders whose acceptance is required by law, save and except that there are changes to this Plan which will be stated below in this Order.

(2)  Debtors' counsel, stated in open court on the August 30, 2017, certain changes to the Plan of Reorganization Debtor's set forth below.  Those representations made in open court shall become a part of this Confirmation Order.

(3)  The Plan, and the proponents of the Plan, have complied with the provisions of Chapter 11 of Title U.S.C. Section 1129(a); the Plan has been proposed in good faith and not by any means forbidden;

(4)  All payments made or promised by the Debtor, or by a person issuing securities or acquiring property under the Plan, or by any other person or services or for costs and expenses, or in connection with the Plan and incident to the case, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of Plan, will be subject to the approval of the Court;

(5)  The identity, qualifications and affiliations of the persons who are to be directors or officers, or voting trustees, if any, of the Debtor, after confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable and consistent with the interests of the creditors and equity security holders

and with public policy; and

(6) The identity of any insiders that will be employed or retained by the Debtor, and their compensation, have been fully disclosed; and

(7) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

> (A) with respect to a claim of a kind specified in Section 507(a)(1) or 507(a)(2) of title 11, U.S.C., on the effective date of the Plan, the holder of such claim will receive, on account of such claim, cash equal to the allowed amount of such claim;
>
> (B) with respect to a class of claims of a kind specified in Section 507(a)(3), 507(a)(4) or 507(a)(5) of title 11 U.S.C., each holder of a claim of such class will receive-
>
>> (I) if such class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or
>>
>> (ii) if such class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim; and

    (c)  with respect to a claim of a kind specified in Section 507(a)(6) of title 11 U.S.C., the holder of such claim will receive, on account of such claim, deferred cash payments over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the Plan, equal to the allowed amount of such claim.

(8)  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan.

(9)  That at Article V of the Plan of Reorganization (Docket Text No. 173), the Court finds that the Plan provides certain treatment to the BEXAR COUNTY TAX ASSESSOR/COLLECTOR that has been objected to by the BEXAR COUNTY TAX ASSESSOR/COLLECTOR.  The Court finds that the treatment and payment to the Class 2 Creditor, BEXAR COUNTY TAX ASSESSOR/COLLECTOR, shall be paid as follows:

Class 2  pertains to the allowed secured claim of BEXAR COUNTY TAX ASSESSOR/COLLECTOR (and for those taxing entity which Bexar County collects ad valorem taxes) in the amount of $153,928.44.  The Bexar County allowed secured claim in the amount of $153,928.44 shall be paid in full in forty-eight (48) equal, consecutive monthly installments, with the first payment being made on the first day (1st) day of the first full month

following the Plan's Effective Date. Post-petition interest will accrue at the rate of twelve percent (12%) per annum from the Petition Date until the confirmation date and thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full.

In the event the Debtor sells, conveys or transfers any of the properties which are the collateral of the Bexar County claim or post confirmation tax debt, the Debtor shall remit such sales proceeds first to Bexar County to be applied to the Bexar County tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to Bexar County at any time.  The Debtor shall have sixty (60) days from the Effective Date to object to the Bexar County claim; otherwise, the Bexar County claim shall be deemed as an allowed secured claims in the amount of its amended Proof of Claim. Bexar County shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt respective to each property are paid in full.  Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2017 and subsequent tax years) owing to Bexar County in the ordinary course

of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Bexar County to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make any payments as required in this Plan, Bexar County shall provide written notice of that default by sending written notice by certified mail to Debtor and Debtor's attorney advising of that default, and providing the Reorganized Debtor with a period of fifteen (15) days to cure the default. In the event that the default is not cured within fifteen (15) days, Bexar County may, without further order of this Court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. Bexar County shall provide Debtor with written notice of that default and a fifteen (15) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, Bexar County may, without further order of this court or notice to the Debtor, pursue all of their rights and remedies available to them under the Texas Property Tax Code to collect the

full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than three (3) Notices of Default. In the event of a fourth (4th) default, Bexar County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

(10) That at Page 21 of the Plan, regarding Class 3, the Debtor provided for certain treatment, but the secured creditor, PRINSBANK, requires further clarification in addition to the confirmation order as follows:

In connection with Section 5.01 of the Plan, PrinsBank shall be entitled to recover the amount of $34,000.00, as reasonable fees pursuant to section 506(b) of the Bankruptcy Code. PrinsBank and Debtor agree that on the Effective Date the amount of $34,000.00, shall be added to the Principal balance of the Note that constitutes the Allowed Class 4 Claim of PrinsBank.

The Allowed Class 4 Claim for PrinsBank will also include, as part of the amounts added to the Principal balance of the Note, accrued but unpaid interest of $154,053.18, which represents the unpaid interest through August 31, 2017. After August 31, 2017, the Note shall continue to accrue interest at the per diem rate of $356.1184. PrinsBank and Debtor agree that any additional amounts of accrued interest beginning on September 1, 2017, up to the Effective Date of the Plan shall also be added to the Principal

balance of the Note that constitutes the Allowed Class 4 Claim of PrinsBank. Based on these agreements, Debtor waives any and all rights that it may have under sections 502 and 506 of the Bankruptcy Code to challenge any amounts owed to PrinsBank on its Allowed Class 4 Claim.

(11) That at page 19 of the Plan, at Paragraph 5.01 regarding provision for treatment of classes of creditors, although set forth in the disclosure statement, the Plan of Reorganization may not restate the treatment of the unsecured creditors contained in Class 6 the agreement made regarding the disputed claim of AMIE HAYNES. Accordingly, the Class 6 creditors, to the extent that their claims are allowed shall be paid as follows:

Said Class 6 creditors shall be paid 100% of their claim to be paid pro rata over a period 60 months with 3% annual interest. Said payments shall commence thirty (30) days after the effective date of the Plan, save and except the creditor AMIE HAYNES. The claim of AMIE HAYES has been disputed by the Debtor. On October 8, 2012, AMIE HAYNES, unsecured creditor, filed her Plaintiff's Original Petition in the 57th Judicial District Court of Bexar County, Texas in Cause No. 2012-CI-16520. After this bankruptcy case was filed, the Debtor, on February 13, 2017, filed a Notice of Removal of the litigation from State Court to Bankruptcy Court. The case was assigned a number, Adversary Proceeding No. 17-5011. On March 8, 2017, the Debtor filed a Motion to Withdraw the

Reference (Docket Text No. 5).  To date, the U.S. District Court has not acted upon that Motion to Withdraw the Reference.  The parties have agreed that the Debtor shall withdraw the Motion to Withdraw the Reference immediately upon this Court signing the Confirmation Order.  It is further agreed that within three (3) days thereafter, Debtor's counsel shall file a Motion to Remand this litigation back to the District Courts of Bexar County, Texas.

It is therefore ORDERED, ADJUDGED and DECREED:

(1)  The Plan (Docket Text No. 173) proposed herein, along with a copy of which is attached hereto as Exhibit "A", along with the oral representations made in open court, along with those agreement representations set forth in this Order Confirming Plan have been accepted in writing or verbally by the creditors and equity security holders whose acceptance is required by law.

(2)  MICHAEL J. MURPHY is appointed Disbursing Agent under the Plan, with authority to make all disbursements and payments required by the Plan; provided, however, that the Disbursing Agent and his agent shall not be liable for any  action or failure to act hereunder in the absence of proof of bad faith or gross negligence;

(3)  The Court shall retain jurisdiction until this Plan is fully consummated and/or a final decree is entered, whichever event occurs earlier, specifically including, but not limited to,

the jurisdiction to determine all objections that may be filed to claims of creditors herein; to fix and award all compensation to parties who may be so entitled; to herein determine all questions concerning assets or property of the Debtor, including any questions relating to any sums of money, services or property due to the Debtor; and determine all matters of any nature or type necessary and appropriate to carry out the provisions of this Plan.

###

APPROVED AS TO FORM AND SUBSTANCE:


/s/James S. Wilkins
_____
JAMES S. WILKINS
WILLIS & WILKINS, L.L.P.
Attorney for Debtor
711 Navarro Street, Suite 711
San Antonio, Texas 78205-1711
Telephone: (210) 271-9212
Facsimile: (210) 271-9389
State Bar No. 21486500


/s/Thomas Rice
_____
Thomas Rice
Pulman, Cappuccio, Pullen, Benson & Jones, LLP
2161 NW Military Hwy, Ste 400
San Antonio, TX 78213
Attorney for Prinsbank


/s/Don Stecker
_____
DON STECKER
Attorney for Bexar County
Tax Assessor/Collector


/s/Kevin B. Miller
_____
Kevin B. Miller
Law Office of Kevin B. Miller
8270 Callaghan Road, Suite 250
San Antonio, TX 78230
Attorney for Amie Haynes

PREPARED & SUBMITTED BY:
WILLIS & WILKINS, L.L.P.
JAMES S. WILKINS
Attorney for Debtor
711 Navarro Street, Suite 711
San Antonio, Texas 78205-1711
Telephone: (210) 271-9212
Facsimile: (210) 271-9389
State Bar No. 21486500

EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  16-51419 |
| COWBOYS FAR WEST, LTD., | § | |
| DEBTOR(S) | § | CHAPTER  11 |

## COWBOYS FAR WEST, LTD.'S SECOND AMENDED PLAN OF REORGANIZATION COVERSHEET

## INDEX

Article I - Definitions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 1.01 Administrative Claim. . . . . . . . . . . . . . . . . . . . . . . . 4
 1.02 Allowed Claim or Interest. . . . . . . . . . . . . . . . . . . . . . 4
 1.03 Allowed Secured Claim(s). . . . . . . . . . . . . . . . . . . . . . 5
 1.04 Allowed Unsecured Claim(s). . . . . . . . . . . . . . . . . . . . . 5
 1.05 Bankruptcy Code or "Code". . . . . . . . . . . . . . . . . . . . . 6
 1.06 Bar Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 1.07 Claim(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 1.08 Class of Classification. . . . . . . . . . . . . . . . . . . . . . 7
 1.09 Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 1.10 UVALDE CREDIT COMPANY. . . . . . . . . . . . . . . . . . . . . . . 7
 1.11 Confirmation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 1.12 Confirmation Date. . . . . . . . . . . . . . . . . . . . . . . . . 7
 1.13 Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 1.14 Creditor(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 1.15 Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 1.16 Distribution Date. . . . . . . . . . . . . . . . . . . . . . . . . 8
 1.17 Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 1.18 Estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 1.19 Executory Contract(s). . . . . . . . . . . . . . . . . . . . . . . 8
 1.20 Exhibits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 1.21 Final Order or Final Judgment. . . . . . . . . . . . . . . . . . . 8
 1.22 Initial Distribution Date. . . . . . . . . . . . . . . . . . . . . 9
 1.23 Judgment Creditor(s) or Judgment Claim(s). . . . . . . . . . . . . 9
 1.24 Order Confirming the Plan. . . . . . . . . . . . . . . . . . . . . 9
 1.25 Penalty and Interest. . . . . . . . . . . . . . . . . . . . . . . . 9
 1.26 Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 1.27 Petition Date. . . . . . . . . . . . . . . . . . . . . . . . . . . 10
 1.28 Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
 1.29 Priority Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . 10
 1.30 Pro Rata or Pro Rata Share. . . . . . . . . . . . . . . . . . . . . 10
 1.31 Professional Fees. . . . . . . . . . . . . . . . . . . . . . . . . 10
 1.32 Revested Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . 11
 1.33 Rejection Claim. . . . . . . . . . . . . . . . . . . . . . . . . . 11
 1.34 Secured Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . 11
 1.35 Secured Creditor(s). . . . . . . . . . . . . . . . . . . . . . . . 11
 1.36 Settled Claim(s), Settlement(s) or Settle. . . . . . . . . . . . . 11
 1.37 Tax Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
 1.38 Unsecured Claim. . . . . . . . . . . . . . . . . . . . . . . . . . 11
 1.39 Unsecured Creditor(s). . . . . . . . . . . . . . . . . . . . . . . 12
Article II-Certain General Terms and Conditions.. . . . . . . . . . . . . . . . 12
 2.01 Satisfaction of all Claims. . . . . . . . . . . . . . . . . . . . . 12
 2.02 Securities Laws. . . . . . . . . . . . . . . . . . . . . . . . . . 12
 2.03 Disbursing Agent. . . . . . . . . . . . . . . . . . . . . . . . . . 12
 2.04 Time for Filing Claims. . . . . . . . . . . . . . . . . . . . . . . 13
 2.05 Modification to the Plan. . . . . . . . . . . . . . . . . . . . . . 14
 2.06 Valuation of Secured Claims. . . . . . . . . . . . . . . . . . . . 15

Article III - Division of Creditors in the Classes. . . . . . . . . . . . . . . 15
 3.01 Class 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
 3.02 Class 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
 3.03 Class 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
 3.04 Class 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
 3.05 Class 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
 3.06 Class 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
 3.07 Class 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Article IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
4.01  Provision for Dealing with Administrative Expense Claims. . . . . . . .  19
Article V . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
5.01  Provision for Treatment of Classes of Creditors. . . . . . . . . . . .  20
      Class 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
      Class 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
      Class 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
      Class 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
      Class 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
      Class 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
      Class 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
Article VI - Means for Execution of the Plan. . . . . . . . . . . . . . .  24
      6.01  Distribution Under the Plan. . . . . . . . . . . . . . . . .  24
      6.01.01    Manner of Cash Payments. . . . . . . . . . . . . . . .  24
      6.02  Cramdown. . . . . . . . . . . . . . . . . . . . . . . . .  24
      6.03  Unclaimed Distributions. . . . . . . . . . . . . . . . . .  25
      6.04  Documentation. . . . . . . . . . . . . . . . . . . . . . .  25
      6.05  Funding of Plan. . . . . . . . . . . . . . . . . . . . . .  25
      6.06  Controversy Concerning Impairment. . . . . . . . . . . . . .  25
Article VII - Executory Contracts and Unexpired Leases. . . . . . . . . . .  26
Article VIII - Effect of Confirmation, Release and Binding Effect. . . . . . .  26
Article IX  Procedures for Resolving Disputed Claims and Interests and Disputed
            Claims Reserve. . . . . . . . . . . . . . . . . . . . . . .  28
Article X -  Retention of Jurisdiction. . . . . . . . . . . . . . . . . .  29
Article XI -      Notices. . . . . . . . . . . . . . . . . . . . . . .  31
Article XII -     Discharge of Debtor. . . . . . . . . . . . . . . . . .  31
Article XIII -    Final Decree. . . . . . . . . . . . . . . . . . . . .  31
Article XIV -     Payment to the United States Trustee. . . . . . . . . . .  31
Article XV -      Post-Petition Reports and Payments to the United States Trustee
                  . . . . . . . . . . . . . . . . . . . . . . . . . .  32
Article XVI -     Vesting of Property of the Estate. . . . . . . . . . . .  32

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.  16-51419 |
| COWBOYS FAR WEST, LTD., | § | |
| DEBTOR(S) | § | CHAPTER  11 |

### SECOND AMENDED PLAN OF REORGANIZATION FOR COWBOYS FAR WEST, LTD.

COWBOYS FAR WEST, LTD. propose the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code and Rule 2015(b) of the Federal Rules of Bankruptcy Procedure:

ARTICLE I

Definitions

For the purposes of this Plan of Reorganization, the following terms shall have the following meanings, equally applicable to the singular and plural forms or the gender of the terms defined, unless the context clearly requires otherwise. These terms shall be designated, where such definition is applicable, with capital letters and those definitions shall be enforceable as terms of this Plan in conjunction with the respective matters to which they reference or define:

1.01.  Administrative Claim:  means a request for payment of an administrative expense in the case under §503(b) that, if allowable, would be entitled to priority under §507(a)(1).

1.02.  Allowed Claim or Interest:  means any claim against, or interest in, the Debtor's, proof of which was filed on

or before the Bar Date or pursuant to 2.04.02 herein or, if no proof of claim or interest has been filed, a claim or interest that was scheduled by the Debtor on the Debtor's original schedules filed on or about the petition date as liquidated in amount and not disputed or contingent or disputed in the disclosure statement or this plan and, in either case, a claim or interest as to which no objection has been filed or will be filed; or if subject to an objection or other proceeding considered by the Court, a claim or interest that has been determined by Final Order of the Court.

1.03. <u>Allowed Secured Claim(s)</u>: means an Allowed Claim which is secured by a valid, duly perfected voluntary lien on (whether voluntary or involuntary), or a security interest in, property in which the Debtor have an interest (including property of the estate), or which is subject to setoff under Bankruptcy Code §553, to the extent of the lesser of: (i) the value of such property securing the Allowed Secured Claim; or (ii) the amount of such Allowed Claim which is secured, as the case may be, including any election made pursuant to §1111 of the Bankruptcy Code.

1.04. <u>Allowed Unsecured Claims</u>: means an Unsecured Claim against Debtor: (a) for which a proof of claim has been timely filed with the court by the claims bar date, or, with leave of Court and without objection by any party in interest, late filed, and as to which neither Debtor nor any party in interest

files an objection or as to which the claim is allowed by Final Order of the court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no objection to the allowance thereof has been interposed pursuant to the terms of this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all claims deemed unsecured pursuant to §506(a) of the Bankruptcy Code.

1.05.    Bankruptcy Code or "Code": means Title 11, U.S.C. §101 et seq., the statute of the United States, in effect on the petition date, and all amendments thereto and in effect on or before the confirmation date, or thereafter only if specifically provided retroactive by any such amendment and only to the extent such amendment may be valid and constitutional, and does not materially and adversely affect the interest of the Debtor, creditors or any other party in interest.

1.06.    Bar Date: means August 8, 2011 for all creditors except a governmental, being the date that was fixed by the Court for filing claims in both Chapter 11 proceedings which are the subject of this Plan pursuant to BANKR. R. P. 3003(b); provided, however, if the Court extends the time for filing any given claim,

the date so set shall be the Bar Date with respect to that claim, but only with respect to such claim.

1.07.   Claim(s): means a "claim" alleged or which is, in fact, due or assertable against the Debtor as defined in Bankruptcy Code §101(4) and includes those claims which are allowed and all those claims which are not yet due, or which are unmatured, contingent and otherwise unliquidated.

1.08.   Class or Classification: means the particular Class designated in this Plan pursuant to Bankruptcy Codes §§1122 and 1129 into which Creditor's Allowed Claims may be included, as provided in this Plan, including classification for voting, for distributions and for impairment.

1.09.   Code: means The United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "Section" or "Sections," unless otherwise specified, shall be to the Code.

1.10.   COWBOYS FAR WEST, LTD. Case:  means the captioned Chapter 11 Bankruptcy case styled In re: COWBOYS FAR WEST, LTD., as commenced on June 24, 2016, as a Chapter 11 proceeding, the date of the filing of the Voluntary Petition.

1.11.   Confirmation: means entry by the Court of an Order Confirming the Plan at or after a hearing pursuant to §1129.

1.12.   Confirmation Date: means the date of Confirmation.

1.13.    Court:  means United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1.14.    Creditor(s):  means all persons or entities having Claims for debts, liabilities and demands of any character whatsoever, as defined in Bankruptcy Code §101(4), including, but not limited to, future contingent Claims for un-matured potential liability of Claims of the United States Government and any agency or department thereof, and any other governmental authority, and whether or not the Creditor has an Allowed Claim.

1.15.    Debtor:  means COWBOYS FAR WEST, LTD., the Debtor, in its proceedings under Chapter 11 of the Code.

1.16.    Distribution Date:  means the date or dates upon which interim distributions provided under this Plan are to be made.

1.17.    Effective Date:  means the date upon which confirmation becomes a Final Order.

1.18.    Estate:  means the bankruptcy estate of, created upon filing this case.

1.19.    Executory Contract(s):  means any contract found to be of the nature referred to in §365 of the Bankruptcy Code as an Executory Contract, which requires assumption and/or rejection by the Debtor.

1.20.    Exhibits:  means those items (i) attached to the Plan and incorporated herein by reference; and (ii) attached to

the Approved Disclosure Statement and incorporated herein and therein by reference; and (iii) attached to the Order Confirming the Plan and incorporated herein and therein by reference.

1.21.  Final Order or Final Judgment:  means any Order of the Court which is conclusive of all matters adjudicated therein, which is in full force and effect because the Final Order has not been:  (i) appealed, is not an allowed appeal or is denied review by certiorari or otherwise; or (ii) has not been reversed or modified; or (iii) which is not the subject of any pending appeal, review, rehearing, and is in all respects final and non-appealable.

1.22.  Initial Distribution Date:  means the date upon which the first distribution under the Plan shall be made.  The Initial Distribution Date shall be that date which the Debtor choose in its sole discretion; however, it shall be no later than thirty (30) days after Confirmation.

1.23.  Judgment Creditor(s) or Judgment Claim(s):  means a Creditor whose Claim arose as a result of the entry of a judgment prior to the Petition Date by a state or federal court of competent jurisdiction in a proceeding involving the Debtor.

1.24.  Order Confirming the Plan:  means the Final Order of the Court pursuant to Bankruptcy Code §1129, finding that the Debtor's Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation, and which may contain such other provisions, orders, findings, modifications and

judgments which by the terms of this Plan or the Bankruptcy Code are appropriate and necessary to carry forward this Plan to substantial consummation, including the Exhibits (as may be amended or modified).

1.25.    Penalty and Interest:  means any statutorily prescribed penalty or interest which has accrued because of Debtor's failure to pay a tax imposed or to file a tax return with a governmental entity.

1.26.    Petition:  means the Voluntary Petition filed by Debtor under §301 of Title 11 commencing this case.

1.27.    Petition Date:  means June 24, 2016, the date the case was filed under Chapter 11 of the Bankruptcy Code.

1.28.    Plan:  means this Plan of Reorganization, including any modifications, amendments or corrections made in accordance herewith under the provisions of the Code.

1.29.    Priority Claim:  means any Claim, other than a Tax Claim or an Administrative Claim entitled to priority under §507(a).

1.30.    Pro Rata or Pro Rata Share:  means the amount which is the result of multiplying the net proceeds or total proposed dividend owing to a named Class of Creditors pursuant to the terms of this Plan, by that fraction in which the numerator is the allowed amount of the particular Creditor's Claim of the named Class and the denominator is the allowed amount of all the Creditors' Allowed Claims of the named Class.

1.31.    Professional Fees:  means the Allowed Claims for, or those charged by, attorneys, accountants, appraisers or other professionals and reimbursement of expenses reasonably incurred in rendering such professional services which are:

(a)    allowed pursuant to Bankruptcy Code and entitled to priority status in priority to or as Administrative Expenses Claims pursuant to Bankruptcy Code §§ 327, 330, 331, 503(b)(3)(D), 507(a)(1), 1102, 1103; and/or

(b)    allowed under the Plan after the Effective Date for services rendered after the Effective Date when approved by the Court, if necessary, and only to the extent reasonable under existing case law either at law or in equity.

1.32.    Re-vested Debtor:  means COWBOYS FAR WEST, LTD., LLC as re-vested with property of its respective estate pursuant to §1141(b).

1.33.    Rejection Claim:  means any Claim arising by reason of rejection by the Debtor of a contract or lease pursuant to §365 or §1123(b)(2).

1.34.    Secured Claim:  means any Allowed Claim secured by property of the Debtor, to the extent of the value of such collateral.

1.35.    Secured Creditor(s):  means a Creditor holding an Allowed Secured Claim, and may include Allowed Claims evidenced by valid Judgment Liens, Statutory Liens, other involuntary liens or mortgages, and all voluntary liens or mortgages against the property of the estate or assigned assets.

11

1.36.    <u>Settled Claim(s), Settlement(s) or Settle</u>:  means
the Allowed Claims resulting from either the terms of agreements
regarding disputed Claims reached by and between:

    (a)  the respective Creditors having disputed, unliquidated,
       contingent or Non-Allowed Claims; and

    (b)  the Debtor which fully liquidates and renders undisputed
       any Claim which is thereafter deemed an Allowed Claim.

1.37.    <u>Tax Claim</u>:  means any Claim of governmental units
for taxes as described in §507(a)(7), excluding penalty and
interest on such tax.

1.38.    <u>Unsecured Claim</u>:  means any Claim that is not a
Secured Claim, Administrative Claim, Priority Claim or Tax Claim.

1.39.    <u>Unsecured Creditor(s)</u>:  means all Creditors
holding Claims against the Debtor other than an Allowed Secured
Claim.

<u>ARTICLE II</u>

<u>Certain General Terms and Conditions</u>

2.01.    <u>Satisfaction of all Claims</u>:  Various types of
Claims are defined in this Plan.  This Plan is intended to and
shall satisfy, in the manner specified herein, all claims against
Debtor of whatever character, whether or not contingent or
liquidated, and whether or not Allowed Claims.  ONLY ALLOWED
CLAIMS AND INTERESTS WILL RECEIVE THE TREATMENT AND DISTRIBUTIONS
SPECIFIED BY THE PLAN.  UPON THE EFFECTIVE DATE, THE DEBTOR  SHALL
BE RELEASED AND DISCHARGED FROM ALL DEBTS AND LIABILITIES AND

DEBTOR SHALL OWN ALL OF THEIR RESPECTIVE PROPERTY SUBJECT ONLY TO THE CLAIMS AND INTERESTS OF CREDITORS, IF ANY, AND LIENS AND ENCUMBRANCES, IF ANY, AS SPECIFICALLY SET FORTH IN THE PLAN.

2.02.    <u>Securities Laws</u>:  Any satisfaction provided to a Creditor pursuant to this Plan which is or may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to §1145.  Such exemption does not extend to most subsequent transfers of such interests by "underwriters" as that term is defined in §1145.

2.03.    <u>Disbursing Agent</u>:  MICHAEL J. MURPHY, Managing Member of the  Debtor, shall serve as disbursing agent for all distributions under the Plan.  MICHAEL J. MURPHY may appoint such transfer or other agents as it deems necessary and reasonable to assist in making distributions required by the Plan.

2.04.    <u>Time for Filing Claims</u>:

2.04.01  All Claims assertable and arising prior to the Petition Date shall have been filed with the United States Bankruptcy Clerk in San Antonio, Texas by the Bar Date.  The schedules are on file at the office of the Bankruptcy Clerk and are open for inspection during regular business hours at the office of the Bankruptcy Clerk, 615 E. Houston St., San Antonio, Texas 78205. Claims filed pursuant to assumption or rejection of Executory Contracts should also refer to Section VII of the Plan for special requirements regarding their Claims.  Debtor's failure

to designate a Claim in their schedules as being disputed, contingent or unliquidated, does not constitute an admission that such claim is not subject to objection. The Debtor reserves the right to dispute, or assert offsets or defenses, to any Claims reflected in their schedules as to amount, liability or status. This statement is not intended by the Debtor to mean that all Claims shown in the schedules are disputed, contingent or unliquidated, thereby requiring all Creditors to file Claims. It is merely included to prevent any Creditor from seeking to use the schedules as an admission by Debtor as to the amount of liability in a Claim objection or other proceeding. If a Creditor's Claim is scheduled without a disputed, contingent or unliquidated notation, that Creditor need not file a Claim unless that Creditor disagrees with the amount scheduled. If the Debtor amends downward any Claim shown on the schedules, those Claimants will be notified and will be given additional time as provided by the Bankruptcy Rules within which to file their Proofs of Claim, if they so desire.

2.04.02  All Administrative Claims assertable and arising during the Case shall be filed with the United States Bankruptcy Clerk in San Antonio, Texas no later than ten (10) days prior to the first hearing on confirmation; provided, however, all Administrative Claims of the Case filed by professionals for compensation incurred prior to Confirmation under §330 shall be

filed within ninety (90) days after the Confirmation Date.  If these Claims are not filed on or before the respective deadlines, such Claims shall not be allowed, unless the Court has ordered otherwise or orders otherwise.

In addition, all requests for payment of Administrative Claims incurred after the confirmation of the Plan shall be filed with the United States Bankruptcy Clerk in San Antonio, Texas prior to or simultaneously with the Debtor's application for Final Decree.

2.05.    <u>Modifications to the Plan</u>:  This Plan may be modified or corrected upon motion of the Debtor pursuant to §1127 and Bankruptcy Rule 3019 prior to Confirmation.  Modifications or corrections may be made without additional disclosure pursuant to §1125 provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests.  After the Confirmation Date, the Debtor, upon order of the Court and in accordance with §1127(b), may remedy any defect or omission or reconcile any inconsistencies in the Plan in such a manner as may be necessary to carry out the purposes and intent of the Plan.

2.06.    <u>Valuation of Secured Claims</u>:  All Secured Claims shall be allowed in an amount as agreed to by the Debtor and the Creditor holding the Secured Claim, as provided by this Plan, unless the claim is disputed, or as ordered by the Court pursuant

to §506.  The Court shall not be required to determine the amount of a Secured Claim unless a motion to require such determination is filed at least ten (10) days prior to the first hearing on confirmation by the Debtor or other party in interest.  In the event that such a Motion is not filed, the value of the property as set forth in this Plan shall be deemed as the court's finding as to valuation and the judgment and tax lien holders shall be deemed Unsecured Creditors.

<u>ARTICLE III</u>

<u>Division of Creditors in the Classes</u>

3.01.  <u>Class 1</u>:  Claim of The Law Office of WILLIS & WILKINS, L.L.P. by James S. Wilkins, arising under §507(a)(1) of the Bankruptcy Code up to $75,000.00, and fees due the United States Trustee.

3.02  <u>Class 2</u>:  All ad valorem taxes, whether or not secured, particularly including any liability to the Bexar County Taxing Authorities –

| | |
|---|---:|
| Bexar County Tax Assessor/Collector<br>P.O. Box 839950<br>San Antonio, TX 78283-3950 | $150,000.00 |

**Total $150,000.00**

3.03 <u>Class 3</u>:  Secured portion of claim of the following:

| | |
|---|---:|
| Crossroads 2004, LLC<br>70 North May Ave.<br>Oklahoma City, OK 73102 | $4,200,000.00 |

Total  **$4,200,000.00**

3.04 <u>Class 4:</u>  Secured portion of claim of the following:

Prinsbank                                              $2,059,837.19
508 Third Street
P.O. Box 38
Prinsburg, MN 56281

|  | TOTAL: | **$2,059,837.19** |
|---|---|---|

3.05 <u>Class 5:</u>  Secured portion of claim of the following:

Ford Motor Credit                                        $96,775.35
P.O. Box 650575
Dallas, TX 75265-0575

|  | **TOTAL** | **$96,775.35** |
|---|---|---|

3.06 <u>Class 6:</u>  Unsecured claims of the following:

Amie Haynes                        (DISPUTED)        $12,000.00
c/o Kevin B. Miller
Law Office of Miller & Bicklein
8270 Callaghan Road, Suite 250
San Antonio, TX 78230

**(A claim has been filed and the Debtor has filed an Objection.  The Debtor values the claim at $10,000.00, but the Court has entered an order that for voting purposes, the Claim shall be deemed to be $65,477.95)**

Johnson Controls                                          $667.20
P.O. Box 730068
Dallas, TX 75373

Nicholas Joseph Finnerty           (DISPUTED)          UNKNOWN
c/o Monica I. Bohuslov
901 Main Street, Suite 5200
Dallas, TX 75202

**NO CLAIM FILED - WILL NOT BE PAID**

Renea Menzies                                          $3,500.00
c/o Carabin & Shaw, P.C.
630 Broadway
San Antonio, TX 78215

Sunstate Equipment Co., LLC                            $3,523.21
5552 W. Washington St.
Phoenix, AZ 85034

Triple D Security, Inc.                                    $3,269.68
P.O. Box 2346
Victoria, TX 77902

**UNDISPUTED TOTAL $20,959.89**

    3.07 Class 7:  The Debtor, COWBOYS FAR WEST, LTD.

    B.   <u>Provision for Treatment of Classes of Creditors</u>

    The actual and necessary costs and expenses of administration of, and claims against, Debtor entitled to priority in accordance with §503(b) and §507(a)(1) of the Bankruptcy Code are not impaired.  The holder of any Allowed Administrative Claim, except as otherwise provided in the Plan, shall be paid in full, without interest, in cash, on the effective date of the Plan, from estate funds or upon such other terms as may be agreed upon between the holder of any such claim and the Debtor.  Such payment will include payment of all expenses incurred by the Debtor in the operation of the estates since the date of filing of this cases, together with authorized and allowed fees and expenses of professionals employed by the Debtor including attorneys, accountants and appraisers.  Debtor estimates that there will be no administrative claims except as otherwise provided for in Class 1.

ARTICLE IV

4.01.     Provision for Dealing with Administrative Expense Claims

The actual and necessary costs and expenses of administration of, and Claims against, Debtor entitled to priority in accordance with §503(b) and §507(a)(1) of the Bankruptcy Code are not impaired the holder of any Allowed Administrative Claim, except as otherwise provided in the Plan, shall be paid in full, without interest in cash, on the Effective Date of the Plan, from estate funds or upon such other terms as may be agreed upon between the holder of any such Claim and the Debtor.  Such payment will include payment of all expenses incurred by the Debtor in the operation of the estates since the date of filing of this case, together with authorized and allowed fees and expenses of professionals employed by the Debtor including attorneys, accountants and appraisers.  Debtor estimates that there will be no Administrative Claims except as otherwise provided for in Class 1.

ARTICLE V

5.01.     Provision for Treatment of Classes of Creditors

The actual and necessary costs and expenses of administration of, and claims against, Debtor's entitled to priority in accordance with §503(b) and §507(a)(1) of the Bankruptcy Code are not impaired.  The holder of any Allowed Administrative Claim,

except as otherwise provided in the Plan, shall be paid in full, without interest, in cash, on the effective date of the Plan, from estate funds or upon such other terms as may be agreed upon between the holder of any such claim and the Debtor. Such payment will include payment of all expenses incurred by the Debtor in the operation of the estates since the date of filing of this cases, together with authorized and allowed fees and expenses of professionals employed by the Debtor including attorneys, accountants and appraisers. Debtor estimates that there will be no administrative claims except as otherwise provided for in Class 1.

Class 1: The Class 1 claim of the WILLIS & WILKINS, L.L.P. by James S. Wilkins shall be paid from the retainer held by the claim holder upon the Court's approval of the claim holder's fee, current cash reserves, and from future income of the Debtor. The Class 1 claim of the United States Trustee shall be paid as they become due. The reorganized Debtor or other responsible party shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the reorganized Debtor or other responsible party shall file with the Court and serve on the United States Trustee a Quarterly Financial Report for each month (or portion thereof) the case remains open in a format prescribed by United States Trustee and provided to the Debtor by the United States Trustee. The Class 1 Creditor is

deemed unimpaired by the Plan.

Class 2:  The Class 2 creditors, to the extent that their claims are allowed, shall receive 100% of their claims as follows: The debt to the Bexar County Tax Assessor/Collector, shall be paid over a period of sixty (60) months with 12% interest.

Class 3:  The Class 3 Creditors, to the extent that their claims are allowed, shall be paid as follows: CROSSROADS 2004, LLC, shall be paid at its contract rate, save and except that any debt accrued since the filing of the Chapter 11 petition and any attorney's fees incurred by said entity shall be added to the Note balance and payments shall commence thirty (30) days after the effective date of the Plan of Reorganization; but it is expressly acknowledged that the Promissory Note maturity date shall not be extended.

Class 4:  The Class 4 Creditors, to the extent that their claims are allowed shall be paid as follows: PRINSBANK shall be paid at its contract rate, save and except that any debt accrued since the filing of the Chapter 11 petition and any attorney's fees incurred by said entity shall be added to the Note balance and payments shall commence thirty (30) days after the effective date of the Plan of Reorganization; but it is expressly acknowledged that the Promissory Note maturity date shall not be extended.

Class 5: The Class 5 Creditors, to the extent that their claims are allowed shall be paid as follows:  FORD MOTOR CREDIT shall be paid at its contract rate.

Class 6: The Class 6 Creditor, to the extent that their claims are allowed shall be paid as follows: The Class 6 Creditors are unsecured debt which is $20,953.89 shall be paid as follows: 100% to be paid pro rata over a period 60 months with 3% annual interest.

ARTICLE VI

Means for Execution of the Plan

6.01.  Distributions Under the Plan: COWBOYS FAR WEST, LTD., the Debtor, in its sole discretion, will make those transfers and distributions required by this Plan from the revested Debtor's operations and upon the latter to occur of (I) the Confirmation Date, or (ii) as soon as practicable after a Final Order is entered allowing the holder's Claim or Interest, or (iii) as otherwise provided by order of the Court.  No distribution or transfer shall be made, however, which would result in any Creditor receiving more than is specifically provided for in this Plan.

6.01.01  Manner of Cash Payments: Cash Payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank from a domestic bank.

6.02.    <u>Cramdown</u>:  The Court may confirm the Plan even though fewer than all Classes of Creditors or Class of Interest holders have accepted the Plan.  In the event that any impaired Class of Creditors or Class of Interest holders fails to accept the Plan by adequate vote as described in §§ 1126 and 1129(a), the Debtor may request the Court to confirm the Plan in accordance with §1129(b) of the Code.  Furthermore, to the extent the Plan does not embody certain provisions setting forth the circumstances apprehended by §1129(b), the Debtor may amend or modify the Plan to include such provisions should it become necessary to confirm the Plan under cramdown.

6.03.    <u>Unclaimed Distributions</u>:  In the event that COWBOYS FAR WEST, LTD., the Debtor, is unable to locate a holder of a Claim or Interest in order to make such distribution as herein provided, the revested Debtor shall hold such distribution for the benefit of such Claim or interest holder until all payments and transfers are made pursuant to this Plan, then such distributions or property shall be paid pro rata to Class 4 Creditors.

6.04.    <u>Documentation</u>:  The appropriate documentation for each transaction contemplated herein shall be in accordance with Article IV herein.

6.05.    <u>Funding of Plan</u>:  The distributions and payments provided for in the Plan shall be funded by the revested Debtor's future business operations and sale of assets, if necessary.

6.06.     <u>Controversy Concerning Impairment</u>:  In the event of a controversy as to whether any Creditor(s) or interest holders or Classes of Creditors are impaired under the Plan, the Bankruptcy Court shall, after notice and hearing, determine such controversy. To the extent that the Court finds that a Class of Creditors or a Creditor is impaired where designated as unimpaired, that Creditor or Class of Creditors may file a vote, notwithstanding other provisions, at the time of Confirmation.  If determined to be unimpaired, the Creditor or Class of Creditors shall be deemed to accept the Plan as provided in §1126(f).

## ARTICLE VII

### Executory Contracts and unexpired Leases

7.01.     The Debtor have no leases or executory contracts.

7.02.     Rejection Claims must be filed with the United States Bankruptcy Clerk in San Antonio, Texas within one hundred eighty (180) days after Confirmation.  Any objections to such Rejection Claims shall be filed as provided in Article VIII.

7.03.     Each executory contract or unexpired lease assumed hereby by the Debtor shall be assumed as of the Confirmation Date.

## ARTICLE VIII

### Effect of Confirmation, Release and Binding Effect

8.01.     Confirmation of the Plan shall operate as a discharge of the Debtor from all Claims and Interests to the extent provided under §1141(d)(2).

8.01.01    The treatment of Claims and Interests in the Plan shall be deemed in exchange for and shall constitute the complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtor or any of its assets or properties, except where otherwise specifically provided herein.

8.01.02    Except as specifically provided herein, the Plan shall discharge and satisfy all obligations of or claims against the Debtor or revested Debtor to the extent provided under §1141(d)(2), and no Creditor, interest holder or lessor shall have any claim against Debtor upon confirmation with respect to any KNOWN liability or obligation of the Debtor or  the Estate, including, but not limited to:

a)    curing or providing for compliance with regard to any violations by the Debtor of or conflicts with any regulations or licensing requirement, or of any judgment, decree, order, statute, rule or regulation of any court or any public, governmental or regulatory agency or body having jurisdiction over the Debtor;

b)    any unfair labor practices or discrimination claims, complaints or charges filed or threatened against the Debtor;

c)    any and all taxes, whether income, excise, corporate, franchise, property, sales, use, payroll, withholding or otherwise, incurred by or assessed against Debtor prior to the Confirmation Date; and

d)    any and all liability, claims or responsibility in any legal action, administrative proceedings or investigations instituted by or against the Debtor, or the assets thereof, under any law or regulation pertaining to the health or environment including, without limitation, the CERCLA Act of 1980 (42 U.S.C. §9601 et seq.), as amended from time to time, the regulations promulgated thereunder, and statutes or regulations, whether federal, state or local relating to the health or environment.

8.02.    Except as otherwise provided herein, upon the Confirmation Date, all such Claims and Interests against the Debtor shall be satisfied and released in full; and all such holders shall be precluded from asserting against the Debtor, its successors or assigns and its assets or properties, any other or further Claim based upon any act, debt, claim or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

8.03.    Upon a Final Order of Confirmation, the provisions of the Plan will bind the Debtor, revested Debtor and all Creditors and interest holders, whether or not they accept the Plan.

8.04.    This Plan is binding in accordance with §1141. The automatic stay provided by §362 will terminate on the Effective Date.

## ARTICLE IX

### Procedures for Resolving Disputed Claims and Interests

### and Disputed Claims Reserve

9.01.    Debtor or any other party in interest, may object to any claim.  All objections to Claims must be filed within one hundred and eighty days (180) days after the Effective Date.

9.02.    The objecting party shall litigate to judgment, settle or withdraw objections to disputed Claims and disputed Interests.  All legal fees and expenses of the Debtor incurred  in the prosecution of objections to Claims or Interests shall be paid as a Class 4 claim.

9.03.    In determining the amount of the distribution due the holders of Allowed Claims prior to the resolution of all claim disputes, the appropriate Pro Rata calculations pursuant to the Plan shall be made as if all disputed Claims were Allowed Claims in the full amount claimed by the holders thereof; provided however, that the Court may estimate a lesser amount for a Claim holder used in such a Pro Rata calculation or the Trustee and the disputed claim holder may agree upon distribution in an amount less than that claimed.

9.04.    COWBOYS FAR WEST, LTD., LLC shall hold in an interest-bearing account, and separately account for, distributions in respect to disputed Claims.

9.05.    At such time as a disputed Claim becomes an Allowed

Claim, the distributions reserved for such Allowed Claim shall be released from the Disputed Claims reserve and delivered to the holder of such Allowed Claim.  In the event that, or to the extent that, a disputed Claim is disallowed, the distributions reserved for such claim shall be released from the Disputed Claims reserve for Pro Rata distribution to Allowed Claims upon the next Distribution Date.

9.06.   Except as the Court may order otherwise, no payments or distribution shall be made with respect to all or any portion of a disputed Claim unless and until all objections to that Claim have been determined by Final Order.   Payments and distributions to each holder of a disputed claim to the extent that it ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the Class of Claims in which the respective holder is a member.

<u>ARTICLE X</u>

<u>Retention of Jurisdiction</u>

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until final allowance or disallowance of all claims, or to resolve all controversies affected by this Plan in respect to the following matters:

10.01.   To determine all controversies relating to or concerning the classification, allowance or satisfaction of Claims

or Administrative Expenses;

10.02.    To determine any and all pending applications for the rejection or assumption and/or assignment, as the case may be, of executory contracts and unexpired leases to which the Debtor or Revested Debtor are a party or with respect to which the Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

10.03.    To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court, including, without limitation, any proceeding commenced for the purpose of avoiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtor, lien or setoff;

10.04.    To determine any dispute arising under this Plan and to make such orders as are necessary or appropriate to carry out the provisions of the Plan including to approve or determine controversies concerning closing documentation;

10.05.    To grant extensions of any deadlines set herein;

10.06.    To hear and determine all requests for compensation and/or reimbursement of expenses which may be made after Confirmation;

10.07.    To enforce all release provisions under this Plan;

10.08.    To modify the Plan pursuant to Paragraph 2.05 and the Code; and

10.09.    In addition, and at any time, the Court may make such orders or give such direction as may be appropriate under §1142.

10.10    To pursue any and all fraudulent transfer claims, as the case may be.

## ARTICLE XI

### Notices

All notices or demands required or permitted herein shall be deemed to have been duly given and served when made in writing and deposited in the United States mail, first class, in an envelope addressed to the last known address of the notified party, with postage prepaid.

## ARTICLE XII

### Discharge of Debtor

Pursuant to 11 U.S.C. §1141(d)(2) and the rights granted herein, the entry of a final order by the Court confirming this Plan shall operate as a full and complete discharge of the Debtor on all classes of claims.

The consideration received by the Debtor's creditors, as provided in the Plan, will be in full final satisfaction, release, discharge and cancellation of any and all claims of such creditors against COWBOYS FAR WEST, LTD., pre-confirmation and the release of all liens upon his successful completion of all payments and plan provisions.  The claims of the taxing authorities shall be

paid, not discharged.

## ARTICLE XIII

### Final Decree

The Debtor shall file an application for Final Decree no later than six (6) months following confirmation of the Plan.

## ARTICLE XIV

### Payment to the United States Trustee

In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, the Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

## ARTICLE XV

### Post-Petition Reports and Payments to the United States Trustee

On the Confirmation Date, the Debtor shall be relieved of any further obligation to file quarterly operating reports with the Bankruptcy Court. However, the Debtor and the Reorganized Debtor shall make all post-confirmation payments to the United States Trustee as may be required pursuant to 28 U.S.C. §1930(a)(6), and shall provide to the United States Trustee such financial reports as the United States Trustee may reasonably request, until the Chapter 11 case has been closed by the Bankruptcy Court or converted to another chapter under the Bankruptcy Code.

## ARTICLE XVI

### Vesting of Property of the Estate

Post-confirmation, all property of the Estate will be

conditionally vested in the Debtor, as a "reorganized Debtor."  In the event of a post-confirmation conversion of the Chapter 11 Case to a case under Chapter 7 of Title 11 of the Bankruptcy Code, all remaining conditionally vested property of the Estate shall come into and become a part of the Chapter 7 Estate.

RESPECTFULLY SUBMITTED this 12th day of JUNE, 2017.

/S/MICHAEL J. MURPHY
MICHAEL J. MURPHY, President of
Cowboys Concert Hall-Arlington,
Inc., General Partner to the
DEBTOR-IN-POSSESSION

APPROVED AS TO FORM:
WILLIS & WILKINS, L.L.P.
711 Navarro Street, Suite 711
San Antonio, TX 78205-1711
(210) 271-9212  (Telephone)
(210) 271-9389  (Facsimile)
TBC NO. 21486500

/s/James S. Wilkins
BY:  JAMES S. WILKINS
     Attorney for Debtor

DGG\JSW\COWBOYS\REORGAN-PLAN-2-AMD

33

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended Plan of Reorganization has been sent to the following by first class U.S. mail, on this 12th day of June, 2017:


U.S. Trustee
615 E. Houston Street, Suite 533
San Antonio, Texas 78205


/s/James S. Wilkins
 JAMES S. WILKINS
 Attorney for Debtor